CHANDLER L. MCKELVEY, Secretary Department of Development
You have asked whether local governments or local public authorities in Wisconsin have statutory authority to issue tax-exempt debt obligations to provide mortgage loans for the purchase, rehabilitation or improvement of owner-occupied residences, and if so, under what conditions.
As you pointed out in your letter to me, the Mortgage Subsidy Bond Tax Act of 1980 (Pub.L. No. 96-499; herein, the Act) placed a variety of substantive and procedural controls on the use of tax-exempt bonds for financing owner-occupied residences. The Act limits the amount of mortgage subsidy bonds a state can sell in a calendar year. Each state may allocate the bonding "ceiling" between housing authorities and other issuers within the state.
Section 7m of ch. 20, Laws of 1981. requires the Wisconsin Building Commission to approve the issuance of bonds under chs. 66, 67 and 234, Stats., which finance owner-occupied residences. Necessarily, the Building Commission must consider the impact of the federal *Page 75 
act in considering any particular bond issue. The Building Commission has requested your Department's assistance in exercising its powers.
Since only tax-exempt bonds are included in the ceiling imposed by the Act on Wisconsin, your Department and the Building Commission must first consider the Act (or the opinion of qualified bond counsel) as to whether a proposed issue is tax-exempt or not. Since various provisions of the Act interact with the statutory authority to issue bonds, I will briefly discuss the Act before discussing which local units of government or public authorities have the statutory authority to issue such bonds.
I
The Mortgage Subsidy Bond Tax Act of 1980 was Congress' response to a surge in housing bonding.[1] Prior to the enactment of the Act on December 5, 1980, bonds whose proceeds were used to provide or finance residential real property for family units were not considered to be arbitrage bonds, and were therefore tax-exempt.[2]
The Act created a new definition, that of "mortgage subsidy bond," and declared that such bonds, with two exceptions, were not described in subsecs. (a)(1) or (2) of section 103 (of the Internal Revenue Code). I.R.C. § 103A(a), (b). Description of an obligation in I.R.C. § 103 (a)(1) or (2) is necessary to exempt the interest on such obligation from federal taxation. The two exceptions are "qualified mortgage bonds" and "qualified veterans' mortgage bonds." I.R.C. § 103A(b)(2)(A), (B).
A "qualified mortgage bond" is one issued before December 31, 1983, as a part of a qualified mortgage issue, I.R.C. § 103 A(c)(1)(A), (B). A "qualified mortgage issue" is one in which (1) all proceeds (exclusive of issuance costs and reserves) are used to finance owner-occupied *Page 76 
residences and (2) the requirements of I.R.C. § 103A(d) through (j), inclusive, are met.[3] I.R.C. § 103A(c)(2)(A).
A "qualified veterans' mortgage bond" is a registered general obligation bond which is part of an issue, substantially all of the proceeds of which are to be used to provide residences for veterans, but not to refinance existing mortgages. I.R.C. § 103A(c)(3).
Therefore, your Department should ascertain (or rely on an opinion from bond counsel) whether a proposed issue consists of either qualified mortgage bonds or qualified veterans' mortgage bonds in determining whether the proposed issue should be included in the ceiling amount imposed by the Act.
II
Certain local governments and local public authorities do have statutory authority to issue bonds for the purchase, rehabilitation or improvement of owner-occupied residences, subject to the restrictions in the authorized statutes.
Chapter 66 (Municipal Law) and ch. 67 (Municipal Borrowing and Municipal Bonds), Stats., contain grants of bonding power to public agencies or authorities and to municipalities. Section67.03 (1). Stats., sets municipalities apart from agencies and authorities and imposes restraints on the bonding power so granted: "Except as provided in s. 67.01 (8). municipalities may borrow money and issue municipal obligations therefor only for the purposes and by the procedures specified in this chapter."
Chapter 2, Stats., divided the state into seventy-two counties; sec. 67.04 (1). Stats., enumerates the purposes for which counties can borrow. *Page 77 
The only purpose that even compares with the provision of mortgage loans is subsec. (r). Section 67.04 (1)(r), Stats., provides that a county may issue bonds:
 To provide funds for acquiring land by purchase or condemnation and constructing thereon or upon lands otherwise acquired by the county, various types of housing to be sold or rented, upon such terms as the county board may authorize, to honorably discharged members of the armed services of the United States who served in any of its wars and who at the time of induction into such service were residents of such county.
Assume, arguendo, that a given county, by appropriate procedure, adopted a bonding resolution, issued bonds and acquired veterans' housing with the proceeds. Subsequently, the county authorized the sale of dwellings to veterans by deed, taking a mortgage back. To the extent that five percent[4] or more of the bond proceeds were so used, the bond issue becomes a mortgage subsidy bond issue. I.R.C. § 103A(b)(1). To avoid that definition and its consequences, the county asserts that the bond issue is a veterans' mortgage bond issue. However, to be a qualified veterans' mortgage bond issue, and avoid classification as a mortgage subsidy bond (I.R.C. 103A(b)(2)(B)), the issue must be secured by the general obligation of a state. I.R.C. § 103A(c)(3)(B).
Since the county's bonds are not secured by the general obligation of the State of Wisconsin, they cannot be "qualified veterans' mortgage bonds," which are tax-exempt. I therefore conclude that while a county may issue bonds to provide housing (by sale or rental) to veterans, such bonds will not be tax-exempt and will not be includable in the state's ceiling amount set by I.R.C. § 103A(g).
Chapter 60, Stats., allowed the creation of towns. Section67.04 (5), Stats., enumerates the purposes for which towns can borrow. *Page 78 
Section 67.04 (5)(t), Stats., provides that a town may issue bonds "[t]o finance the cost of low-interest mortgage loans under s. 66.38." Section 66.38 (1)(d), Stats., defines a municipality (for purposes of sec. 66.38, Stats.) as "any city, town or village in a county with a population greater than 500,000" (i.e., in Milwaukee County). Milwaukee County contains no towns. Therefore, I conclude that no town in Wisconsin may issue bonds to be used for mortgage loans for owner-occupied residences.
Chapter 66, Stats., allows the incorporation of villages and cities in Wisconsin. Section 67.04 (4), Stats., enumerates the purposes for which villages may issue bonds. Section 67.04 (2), Stats., enumerates the purposes for which cities may issue bonds. Sections 67.04 (4)(e) and 67.04 (2)(zq), Stats., are identical and allow villages and cities to issue bonds "[t]o finance the cost of low-interest mortgage loans under s. 66.38."
I therefore conclude, subject to sec. 66.38, Stats., that only the villages of Bayside, Brown Deer, Fox Point, Greendale, Hales Corners, River Hills, Shorewood, West Milwaukee and Whitefish Bay; and that only the cities of Cudahy, Franklin, Glendale, Greenfield, Milwaukee, Oak Creek, St. Francis, South Milwaukee, Wauwatosa and West Allis presently have direct authority to issue bonds to be used for mortgage loans for owner-occupied residences.
If the bonds so issued meet all requirements of the federal act, then the interest payable on such bonds will be exempt from federal taxation. The amount of bonds issued must be included in the state ceiling amount. I.R.C. § 103A(g).
With one exception, the authorities possessing analogous bonding authority are created by ch. 66, Stats. The exception is sec. 59.075, Stats., which allows the creation of county housing authorities. Section 59.075 (1), Stats., makes secs. 66.40 to 66.404, Stats., applicable to counties.
Sections 66.40 to 66.404, Stats., are referred to as the "Housing Authorities Law." To bring a housing authority into existence, a city council, by resolution, declares a need for an authority to function in the city. Upon the adoption of said resolution, sec. 66.40 (4)(a), Stats., provides that "a public body corporate and politic shall then exist in the city and be known as the `housing authority' *Page 79 
of the city. Such authority shall then be authorized to transact business and exercise any powers herein granted to it."
The powers granted to a city by secs. 66.40 to 66.404, Stats., extend to villages, pursuant to sec. 61.73, Stats., which provides in part:
 The provisions of ss. 66.40 to 66.425 shall apply to villages, and the powers and duties conferred and imposed by these sections upon mayors, councils and specified city officials are hereby conferred upon presidents, village boards and village officials performing duties similar to the duties of such specified city officials respectively.
Let us assume either a county housing authority (under sec. 59.075, Stats.), a village housing authority (under sec. 61.73, Stats.) or a city housing authority (under secs. 66.40 to 66.404, Stats.) intends to issue bonds and use the proceeds indirectly to furnish mortgage loans for owner-occupied residences since no direct specific statutory authority exists. One of the few workable sequences appears to be as follows. An eligible borrower selects a residence which the authority buys (or had bought) with bond proceeds. The authority then sells it to the eligible borrower, taking back a purchase money mortgage.
Bonding authority is found in sec. 66.40 (13)(a), Stats.: "An authority shall have power to issue bonds from time to time in its discretion, for any of its corporate purposes." Authority to sell acquired real estate is found in sec. 66.40 (9)(j), Stats.: "[An authority shall have power] [t]o contract for sale and sell any part or all of the interest in real estate acquired and to execute such contracts of sale and conveyances as the authority may deem desirable." A mortgage is a conveyance. Sec. 706.01 (3), Stats.
It would appear that all counties, villages and city housing authorities in Wisconsin would be statutorily authorized to issue bonds for housing loans using this procedure.[5] Because of the holding in Jolly v. Greendale Housing Authority. 259 Wis. 407,49 N.W.2d 191 (1951), I cannot give you an unqualified opinion to that effect if this indirect approach is used. *Page 80 
In Jolly, the Greendale Housing Authority agreed to sell Mr. Ward its housing authority bonds, the proceeds of which were to be used to purchase a tract of land upon which were existing houses. Mr. Jolly sued and alleged there was no shortage of dwellings in Greendale at rents which low income persons could afford and that the authority did not intend to destroy the homes for slum clearance. Therefore, he argued, the authority exceeded its stated powers. The supreme court agreed and reversed the trial court's decision sustaining a demurrer to the complaint.
The supreme court reviewed the purpose of sec. 66.40, Stats., the Housing Authority Law. The court held "the act [sec. 66.40, Stats.] does not grant unlimited authority to engage in the housing business regardless of the nature, character or purpose of the venture. It is only when the purpose of the law is to be effectuated that the Authority may proceed." Jolly,259 Wis. at 409.
A determination of whether this use of housing authority bonding power effectuates the purpose of the law is needed but is beyond the scope of this opinion. I suggest you require any authority which proposes to use this method to furnish an opinion from bond counsel that such proposed bond issue effectuates the purpose of the law (sec. 66.40, Stats.). In the alternative, you may ask me for my opinion when the need arises.
The remaining authorities created by ch. 66, Stats., are redevelopment authorities and community development authorities.
Redevelopment authorities are granted bonding power by secs. 66.431 (5)(a)4.a. and 66.431 (5)(c), Stats. Power to acquire and dispose of real estate is granted by sec. 66.431 (5)(a)3., Stats.
If a community development authority is created by a city pursuant to sec. 66.4325 (1), Stats., the creation thereof operates to terminate the operations of a housing authority and/or a redevelopment authority. Sec. 66.4325 (1)(a), Stats. Under sec. 66.4325 (4), Stats., the community development authority has all powers set out in secs. 66.40 and 66.431, Stats.
Section 66.436, Stats., provides that villages shall have all of the powers of cities under secs. 66.43, 66.431 and 66.4325, Stats.
Let us assume that a village or city redevelopment authority or community development authority uses the procedure just *Page 81 
described, intending to use bond proceeds is for home mortgages. Because of the Jolly holding, such use must effectuate the purposes of the law (sec. 66.431, Stats.). Section 66.431 (10), Stats., requires the authority to:
 [P]repare a plan which shall be submitted to the local legislative body for approval which shall assure that decent, safe and sanitary dwellings substantially equal in number to the number of substandard dwellings to be removed in carrying out the redevelopment are available or will be provided at rents or prices within the financial reach of the income groups displaced.
Therefore, bond proceeds could be used for residential mortgages only to the extent that such mortgage loans are made in connection with the furnishing of a replacement dwelling at a price within the financial reach of the displaced owner. However, the federal act will limit the use of the bond proceeds for such a use to not more than five percent of the issue.[6] If more than five percent of the proceeds are so used, the authority will run afoul of the requirement in I.R.C. § 103A(e) which requires that a purchasing mortgagor not have had an interest in a principal residence during the three-year period prior to executing the mortgage. The three-year restriction will not apply if the new house is in a targeted area. However, if the mortgage loans are less than five percent of the issue, the bonds are not mortgage subsidy bonds and the amounts need not be included in the ceiling amount set forth in I.R.C. § 103A(g).
Finally, one redevelopment authority possesses specific statutory authority to use bond proceeds for mortgage loans. That authority is the Redevelopment Authority of Milwaukee.
The authority is granted by ch. 20, sec 1023 (g), Laws of 1981. which creates sec. 66.431 (5m). Stats. Subsection (a) thereof' provides:
 Subject to par. (b), a redevelopment authority in a 1st class city may issue bonds to finance mortgage loans on owner-occupied dwellings located in an abandoned highway corridor. Bonds issued under this paragraph may be sold at a private sale at a price determined by the redevelopment authority. No bonds *Page 82 
may be issued under this paragraph on or after July 1, 1984, except bonds issued to refund outstanding bonds.
Paragraph (b) requires common council approval.
Once the bond proceeds are received, sec. 66.431 (5m)(c), Stats., allows the redevelopment authority to:
 1. Issue mortgage loans for the rehabilitation, purchase or construction of any owner-occupied dwelling in an abandoned highway corridor in the city.
 2. Issue loans to any lending institution within the city which agrees to make mortgage loans for the rehabilitation, purchase or construction of any owner-occupied dwelling in an abandoned highway corridor in the city.
3. Purchase loans agreed to be made under subd. 2.
I therefore conclude, pursuant to sec. 66.431 (5m), Stats., that the Redevelopment Authority of Milwaukee has authority to issue bonds to be used for mortgage loans for owner-occupied residences. To the extent that the Redevelopment Authority of Milwaukee complies with all provisions of the federal act, the interest will be exempt from federal taxation. The amount issued must be included in the state's ceiling amount under I.R.C. § 103A(g).
BCL:DJS
[1] In 1977 for example. 5.3% of the proceeds of tax-exempt bonds issued by state and local governments was used for housing purposes. Two years later, the percentage was 28.9%; in 1980, the percentage was 34.4%.
[2] Arbitrage bonds are defined generally in Treas. Reg. § 1.103-13 (a)(1) as "obligations issued by a State or local government, the proceeds of which are reasonably expected to be used to acquire other obligations where the yield on such acquired obligations will be materially higher than the yield on the governmental obligations during the term of such governmental issue." The interest on arbitrage bonds is taxable. I.R.C. § 103 (c)(1).
[3] Briefly the requirements of I.R.C. § 103A(d) through (f) are as follows:
(d) limits residences to single-family residences;
 (e) restricts purchase money mortgages generally to first time buyers. Home improvement or rehabilitation loan mortgages are exempt;
(f) limits acquisition costs of residence;
 (g) sets ceilings on the amounts of bonds issuable annually:
 (h) gives target areas preference within the first year of a program;
(i) sets stricter arbitrage limitations; and
 (j) requires that the bonds must be registered, prohibits refinancing and allows mortgages to be assumed under certain considerations.
[4] In defining a mortgage subsidy bond in I.R.C. § 103A(b)(1), Congress declared that phrase to mean a bond which is "part of an issue a significant portion of the proceeds of which are to be used directly or indirectly for mortgages on owner-occupied residences." Congress considered the term "significant portion" to normally mean five percent. H.R. Rep. No. 1167, 96th Cong., 2nd Session (1980), reprinted in 1980 U.S. Code Cong. 
Ad. News 5526, 5814.
[5] This opinion should not be construed as either approving or disapproving the described procedure.
[6] See footnote 4.